TELLICO BANK & TRUST CO. *v.* S. P. LOOMIS.*

(*Knoxville.* September Term, 1922.)

1. **HUSBAND AND WIFE.** Under statute husband cannot acquire wife's property by appropriation or reduction to possession.

Under Acts 1919, chapter 126, emancipating married women from all disability with respect to their property by reason of coverture, the only way that the husband can acquire the wife's property during coverture is by purchase or gift, and he does not acquire it by appropriation or reduction to possession, which would have been sufficient to make the property his at common law. (*Post, pp.* 161, 162.)

Acts cited and construed: Acts 1913, ch. 26; Acts 1919, ch. 126.

Cases cited and approved: Parlow v. Turner, 132 Tenn., 339; Baker v. Dew, 133 Tenn., 126; Day v. Burgess, 139 Tenn., 559; Hull v. Hull, 139 Tenn., 572; Henderson Grocery Co. v. Johnson, 141 Tenn., 127.

2. **HUSBAND AND WIFE.** Intrusting management of funds to husband held not gift by wife.

The fact that a wife intrusted to her husband the management of the funds resulting from the sale of her property and of a business purchased therewith, and that he took notes for the purchase price of the property in his own name, does not establish a gift of the fund to her husband so as to subject it to liability for his debts. (*Post, p.* 161.)

3. **HUSBAND AND WIFE.** Creditor of husband before he appropriated wife's property cannot claim estoppel.

A creditor cannot claim that a wife was estopped by clothing her husband with the indicia of ownership of her property to deny

---

*On the right of a husband's creditors to reach fruits or his management of, or services to in connection with his wife's separate estate or business, see notes in 21 L. R. A. 629 and L. R. A. (N. S.) 1124.

the right to subject the property to the payment of his debts, where the debt was contracted by the husband before the wife's property was intrusted to him, since such creditor has not been prejudiced by the wife's conduct, and prejudice is an essential element of estoppel. (*Post, p.* 163.)

Case cited and distinguished: Barnard v. Campbell, 55 N. Y., 456.

---

 FROM MONROE.

---

Appeal from the Chancery Court of Monroe County.— HON. T. L. STEWART, Chancellor.

GRAYSON A. BAILEY and DORE E. YOUNG, for complainant.

R. BEECHER WITT, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the complainant, Tellico Bank & Trust Company, to recover on a note for $2,000 executed in its favor by defendant, S. P. Loomis. The bill averred that said defendant was about to fraudulently dispose of his property and sought by attachment to reach certain funds in the hands of the Bank of Sweetwater to the credit of the Sweetwater Milling Company, and other funds in said Bank of Sweetwater, alleged to be the property of said defendant. Some other parties were made defendants as garnishees. Answers were filed by the Bank of Sweetwater and others in which it appeared that all the funds which the bill undertook to subject were in the hands of said bank. S. P. Loomis and the Sweetwater Milling

Company answered, and averred that the funds in the Bank of Sweetwater belonged to the wife of said Loomis, Mrs. Elizabeth Loomis, and were not liable for the debts of her husband. Loomis also denied individual liability to the complainant bank.

. Proof was taken and the chancellor rendered a decree in favor of complainant for the amount of its note and subjected the funds attached in the hands of the Bank of Sweetwater to the satisfaction of this judgment. From this decree Loomis and the Sweetwater Milling Company have appealed.

The Sweetwater Milling Company is not incorporated. It is the trade-name under which a milling enterprise is operated, and the property belongs either to defendant, Loomis, or to his wife.

Previous to March, 1920, Mrs. Elizabeth Loomis was the owner of a valuable farm. At that time the farm was sold. There was a cash payment and notes were given for the remainder of the purchase price. Defendant Loomis negotiated the sale for his wife, and the proof shows that the purchase-money notes were made payable to Loomis himself. Mrs. Loomis testifies substantially that she does not know why the notes were so written. Loomis gives no clear explanation of why this was done. Both Loomis and his wife in their testimony repudiate the idea of a gift of the proceeds of this farm by the wife to the husband. They say that a portion of the money was used to pay debts, part put in a home, and the remainder of the proceeds of this sale was invested in this business known as the Sweetwater Milling Company. Both these parties say that this was the wife's property, so recognized by them, in which her husband had no interest and was only empowered to manage.

There is no. question but a part of the money attached in the Bank of Sweetwater belonged to, and was carried in the account of, the Sweetwater Milling Company. The remainder of the money so attached in said bank proceeded from one of the purchase-money notes given for Mrs. Loomis' farm. All this fund came from her property originally.

It is doubtless true that the acts of the husband, collecting the cash payment on the wife's farm, taking notes for the balance payable to himself, and putting this money into a mill which he operated himself—that these things under the common law would have amounted to a reduction to possession by the husband of the choses in action and a direct appropriation to his own use of the cash. This would have made the property the husband's property, and it would have been liable for his debts. This is the theory upon which the chancellor based his decree. We are of opinion, however, that the result reached cannot be justified in view of the provisions of chapter 126 of the Acts of 1919. Section 1 of that act is as follows:

"Be it enacted by the General Assembly of the state of Tennessee, that married women be, and are, hereby fully emancipated from all disability on account of coverture, and the common law as to the disability of married women and its effects on the rights of property of the wife, is totally abrogated, except as set out in section 2 of this act and subsequent section thereof; and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and to do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or

hereafter to be married shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of, all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married."

With the exceptions noted therein, the above section of the act of 1919 is identical with section 1 of chapter 26 of the Acts of 1913. The act of 1913 has been construed by this court in many cases, among others, *Parlow* v. *Turner,* 132 Tenn., 339, 178 S. W., 766; *Baker* v. *Dew,* 133 *Tenn.,* 126, 179 S. W., 645; *Day* v. *Burgess,* 139 Tenn., 559, 202 S. W., 911, L. R. A., 1918E, 692; *Hull* v. *Hull,* 39 Tenn., 572, 202 S. W., 914; *Henderson Grocery Co.* v. *Johnson,* 141 Tenn., 27, 207 S. W., 723.

These cases make it plain that it was the intention of the act to deprive the husband of all his common-law rights with respect to the wife's property during coverture. It was intended that she should hold such property during coverture just as if she were not married and the only way that the husband can acquire her property during coverture is by purchase or gift, just as he might acquire the property of a stranger. He is not entitled to appropriate her money without her consent nor to reduce her choses in action to his possession by virtue of his marital right during coverture. Such rights are destroyed by these emancipation statutes.

We do not think the course taken by Mrs. Loomis amounted to a gift of the proceeds of her farm to her husband. She says that she intrusted these funds to him as her agent or manager. He confirms this, and there is nothing to the contrary in the record.

It may be where the wife permits her husband to handle her funds as this one did, clothing him with the indicia of authority or ownership, and credit is extended to the husband thereby, the wife would be estopped to assert her interests. We have no such a case before us, however. The debt sued on is an old one running back to 1915. The complainant extended this credit to the husband long before he had the possession of this property of his wife's. The complainant has not been prejudiced by the wife's conduct.

"Two things must concur to create an estoppel by which an owner may be deprived of his property, by the act of a third person, without his assent, under the rule now considered: (1) The owner must clothe the person assuming to dispose of the property with the apparent title to, or authority to dispose of it; and (2) the person alleging the estoppel must have acted and parted with value upon the faith of such apparent ownership or authority; so that he will be the loser if the appearances to which he trusted are not real." *Barnard* v. *Campbell,* 55 N. Y., 546, 14 Am. Rep., 289.

We think the complainant is entitled to a decree against S. P. Loomis, and in that respect the chancellor will be affirmed. We do not think the complainant is entitled to subject the wife's money in the Bank of Sweetwater to the satisfaction of this judgment. In that respect the decree below will be modified, and the attachment discharged. The costs of the cause will be divided between the complainant and S. P. Loomis.